**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 23-cr-190 (ABJ)** |
| **ASHLEY GAUSE**<br>**D'MARRELL MITCHELL**<br>**TERRANCE BRANHAM**<br>**ASHAWNTEA HENDERSON**<br>**DEAUNDRE BLOUNT**<br>**GLENN DOLFORD,** | |
| **Defendants.** | |

## GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(B) AND 609

The Government hereby notifies the Court and counsel of its intent to offer at trial evidence pursuant to Federal Rules of Evidence 404(b) and 609. Specifically, the Government intends on offering evidence of the following as relevant to the defendants' knowledge, intent, lack of mistake or accident, membership and role in the conspiracy pursuant to Rule 404(b):

- August 5, 2020 Robbery of Walgreens Pharmacy in Midlothian, Virginia
- Mr. Blount's 2022 pharmacy robbery spree
- Mr. Blount's prior jewelry robbery sprees
- Mr. Mitchell's prior cellphone store robberies
- Mr. Branham's prior firearm offenses
- Photographs of firearms on Ms. Gause's phone
- Mr. Neal's shooting of his wife's vehicle
- Communications concerning additional robbery targets and robbery proceeds

The Government also intends on introducing certain of each defendant's prior convictions to impeach their credibility pursuant to Rule 609. For all of the foregoing reasons, the Court should deem the proffered evidence to be admissible.

1

## BACKGROUND[1]

The Government intends on offering the following other crimes evidence during its case-in-chief.

### *August 5, 2020: Walgreens Pharmacy in Midlothian, Virginia*

On August 5, 2020, at approximately 6:00 AM, two suspects entered a Walgreen's Pharmacy located at 6851 Temie Lee Parkway, Midlothian, Virginia. One suspect went to the pharmacy and jumped the counter before grabbing the pharmacist and directing her to the back of the store. The second suspect grabbed a second employee. The suspects stole approximately $13,220 worth of narcotics along with cash from the register.

Cellsite location data for Gause's device reflects that she traveled from Washington, D.C. to the robbery location at the reported time of the robbery. Her device remained near the robbery location during the robbery. Mitchell's device appeared to have been turned off during the robbery. Less than three hours before the robbery, Defendant Mitchell's device searched the exact address of this robbery location. Immediately before the robbery, Gause's device called this exact Walgreen's pharmacy. And after the robbery, Gause took a video on her device of her driving in a BMW with a passenger wearing black pants. The vehicle appears to be a BMW, and the reported robbery vehicle was also a BMW. Mitchell's device connected to a BMW vehicle on August 5, 2020. Additionally, Gause's device contained an image dated August 5, 2020 of various narcotics, including ones consistent in appearance with those that were stolen.

---

[1] The Government refers to its Omnibus Opposition to Defendants' Motion to Sever (ECF No. 129) for a recitation of the facts of this case.

Surveillance footage reflects that the suspect is similar in appearance to Mitchell and wearing a similar head covering to the one Mitchell wore during the June 8 and June 9 robberies. Additionally, the suspect was wearing black pants like the passenger in the BMW filmed by Gause.

Less than four hours after the robbery, Gause placed a phone call to a known drug dealer with whom she had exchanged messages following a different robbery. She informs that dealer "Got some shit."

### Deaundre Blount's 2022 Pharmacy Robberies

In addition to the robberies charged in this case, Mr. Blount is currently charged in federal court in the U.S. District Court for the District of Maryland, Case No. 24-cr-120 (SAG), in relation to multiple pharmacy robberies occurring from January through April 2022.

#### The January 5, 2022 Robberies

On January 5, 2022, at approximately 3:30 am, Feldman's Medical Center Pharmacy located at 11055 Little Patuxent Parkway in Columbia, Maryland was burglarized. Surveillance footage showed two masked suspects dressed in dark clothing exit a 4-door white Honda Civic and gain entry by prying open the front door to the business. One suspect carried a silver Halligan bar and wore black gloves and black sneakers. The second suspect carried a blue pry bar and wore purple gloves and white/grey sneakers. Fifty dollars in U.S. currency and a trash can from inside the pharmacy were taken. The suspects exited the building at 3:33 am.

Then at 4:00 am, the Catonsville Pharmacy located at 6350 Frederick Road in Catonsville, Maryland was burglarized. A neighboring business camera captured the suspect vehicle, a white Honda with a sunroof. Like the Feldman's burglary, the suspects gained entry by prying open the door to the business. There were no interior surveillance cameras to capture suspects' descriptions, and the suspects parked off exterior camera view.

Mr. Blount is connected to these offenses through cellphone evidence, reflecting calls exchanged between him and a co-conspirator prior to the offenses, followed by cellsite location information placing him in the vicinity of both of the robberies at the approximate times of the robberies. Hours after the robberies, Mr. Blount's co-conspirator exchanged text messages with an apparent drug distributor where he discusses the price per bottle of apparent narcotics.

### *The January 14, 2022 Robberies*

On January 14, 2022, at approximately, 2:00 am, two suspects attempted to enter the Rehya Pharmacy located at 405 Frederick Road in Catonsville, Maryland. The suspects tried to pry open the door to the pharmacy using a silver Halligan pry bar and a blue pry bar but were unsuccessful. The surveillance video showed the suspects wearing similar clothing to the suspects in the Howard County burglary and it also captured the license plate of the suspect vehicle, a white Honda Civic with a sunroom MD tag 8DN3476. Detectives conducted a check of the registration and met with the owner, who stated that the tag had been stolen sometime between January 11 and 14, 2022.

Also on January 14, 2022, at approximately 2:38 am, the Medicine Shoppe Pharmacy located at 10313 Georgia Ave, Silver Spring, Maryland was burglarized. Surveillance footage showed two suspects wearing dark hoodies and black pants using a Halligan pry bar to gain entry. The clothing appeared to match that worn by the suspects in the attempted burglary at the Rehya Pharmacy. The suspect vehicle was a white Honda (police report describes it as an Accord) with a sunroof displaying stolen MD Tag 8DN3476.

Then at 3:43 am, Pembrooke Pharmacy located at 11355 Pembrooke Square in Waldorf, Maryland was burglarized. Surveillance video showed two suspects gain entry through the use of a Halligan bar and the suspects appeared to be `wearing the same clothing as the suspects in the Medicine Shoppe Pharmacy surveillance video. The suspects stole approximately $1,557 worth

4

of Oxycodone (Schedule II), Promethazine-Codeine (Schedule V) and $200 in U.S. currency. The suspects emptied a trash can from inside the business and threw items inside. A red-light camera captured a white 4-door Honda Civic MD tag 8DN3476 (same vehicle that was used in the Reyha Pharmacy burglary and the Medicine Shoppe burglary) near the shopping center at approximately 3:35 am.

Mr. Blount is connected to these offenses through cellphone evidence, reflecting calls exchanged between him and a co-conspirator prior to the offenses, followed by cellsite location information placing him in the vicinity of both of the robberies at the approximate times of the robberies. As with the January 5, 2022 offenses, hours after the robberies, Mr. Blount's co-conspirator exchanged text messages with an apparent drug distributor where he discusses the price of various pills, identified by nickname such as "pink," "wock," "rp15," and "rp20."

<u>*The January 19, 2022 Robberies*</u>

On January 19, 2022, 1:57 am, the UVA Pharmacy Pantops located at 590 Peter Jefferson Parkway, Charlottesville, Virginia (Albemarle County) was burglarized. Two black male suspects, one dressed in all back with red sneakers and red gloves armed with a silver Halligan bar, one dressed in all black with gray Nike sneakers with blue/purple gloves armed with a blue pry bar, broke into the business. The suspects stole approximately $1111.53 worth of controlled substances including Hydrocodone-Acetaminophen (Schedule II), Oxycodone HCL (Schedule II) and Promethazine-Codeine syrup (Schedule V). Surveillance video showed the suspects place the drugs into a yellow bucket from the pharmacy and exit the business in two minutes. There was no exterior video surveillance to capture a suspect vehicle.

Then, at 2:37 am, Fisherville Family Pharmacy located at 16 Gosnell Crossing, Unit 101, Staunton, VA (Augusta County) was burglarized. Outside surveillance showed a white Honda

with a sunroof arrive and park in front of business.  The vehicle bore a Virginia tag ending in 3174. Two suspects dressed in all black, one wearing red gloves, one wearing blue/purple gloves, one with black sneakers, other suspect wearing gray and white sneakers, can be seen on surveillance video prying open front door of business with a silver Halligan tool and a blue pry bar. The suspects took one bottle of Promethazine-Codeine syrup (Schedule V).

At 3:34 am, Medicap Pharmacy located at 1851 Virginia Avenue in Harrisonburg, Virginia (Rockingham County) was burglarized.  Surveillance video showed two suspects gain entry by use of a silver Halligan bar and blue pry bar. The suspects can be seen wearing all black, one suspect wearing red gloves, one suspect wearing blue/purple gloves.  No items were taken. Surveillance video showed a white Honda Civic with sunroof and Virginia tag ending in 3174 arrive and park directly in front of the door to the business. The Virginia tag (UKY-3174) was later reported stolen to Fairfax County Police Department in Virginia.

Mr. Blount is connected to these offenses through cellphone evidence, reflecting calls exchanged between him and a co-conspirator prior to the offenses, followed by cellsite location information placing him in the vicinity of both of the robberies at the approximate times of the robberies.  As with the January 5, 2022 offenses, hours after the robberies, Mr. Blount's co-conspirator exchanged text messages with an apparent drug distributor where he discusses the price of various pills, identified by nickname such as "pink," "wock," "rp15," and "rp20."

### *The February 8, 2022 Robberies*

On February 8, 2022, at approximately 1:16 am, HCHC Pharmacy at 1380 Little Sorrell Drive in Harrisonburg, Virginia was burglarized.  Exterior surveillance cameras captured a red Honda 2-door sedan suspect vehicle arrive on scene and two suspects: one wearing all black with white shoes using a blue pry bar; one wearing a black and gray hoodie, black jacket, black sneakers

carrying a silver Halligan bar.  Interior surveillance cameras captured the suspects inside where they stole $99 worth of controlled substances stolen including Hydrocodone-Acetaminophen (Schedule II), Adderall (Schedule II), and Promethazine-Codeine (Schedule V).

Later at approximately 3:29 am, the UVA Health Systems Pharmacy located at 1015 Spring Creek Parkway in Zion Crossroads, Virginia was burglarized.  Surveillance video captured two suspects in dark clothing arrive in a red suspect vehicle and enter the business using a blue pry bar and silver Halligan tool. The suspects stole $25 worth of Promethazine-Codeine syrup.

At 4:00 am, the Food Lion Pharmacy located at 11010 Kentucky Springs Road in Mineral, Virginia was burglarized.  Surveillance video from an external camera showed what appeared to be the same red suspect vehicle that was used in the earlier burglaries on this date.  Surveillance video from an internal camera captured what looks like just one suspect in all black entering the business with the use of a Halligan tool.  The suspect emptied a trash can in the pharmacy and used it to conceal stolen controlled substances - $8529 worth of drugs stolen including Adderall (Schedule II), Hydromorphone (Schedule II), Methylphenidate (Schedule II), Oxycodone HCL (Schedule II), Morphine Sulfate (Schedule II), Promethazine-Codeine (Schedule V).

Mr. Blount is connected to these offenses through cellphone evidence, reflecting calls exchanged between him and a co-conspirator prior to the offenses, followed by cellsite location information placing him in the vicinity of both of the robberies at the approximate times of the robberies.  Additionally, the vehicle used in these robberies is consistent with a photo of a vehicle on Blount's iCloud.  As with the other offenses, hours after the robberies, Mr. Blount's co-conspirator exchanged text messages with an apparent drug distributor where he discusses the price of various pills.

*February 16, 2022 Robbery*

On February 16, 2022, at approximately 3:27 a.m., Karemore Pharmacy in Salisbury, Maryland was burglarized. Surveillance video reflected that two suspects entered the store using a Halligan tool. The suspects emptied a trash can in the pharmacy and used it to conceal stolen controlled substances including Promethazine-Codeine (Schedule V) and Guaifenesin (Schedule V).

Mr. Blount is connected to these offenses through cellphone evidence, specifically cellsite location information placing him in the vicinity of the robbery at the approximate times of the robberies. As with the other offenses, hours after the robberies, Mr. Blount's co-conspirator exchanged text messages with an apparent drug distributor where he discusses the price of various pills.

*February 26, 2022 Robbery*

On February 26, 2022, at approximately 3:50 a.m., Milford Street Pharmacy in Salisbury, Maryland was burglarized. Surveillance video reflected that two suspects entered the store using a Halligan tool. The suspects emptied a trash can in the pharmacy and used it to conceal stolen controlled substances including Oxycodone (Schedule II), among other scheduled drugs.

Mr. Blount is connected to these offenses through cellphone evidence, reflecting calls exchanged between him and a co-conspirator prior to the offenses, followed by cellsite location information placing him in the vicinity of both of the robberies at the approximate times of the robberies. Additionally, Mr. Blount's iCloud reflects a video of someone holding pills stamped "WES 203" and "10/325" consistent with acetaminophen and oxycodone pills stolen in the robbery, with a modified date of February 27, 2022. As with the other offenses, hours after the

robberies, Mr. Blount's co-conspirator exchanged text messages with an apparent drug distributor where he discusses the price of various pills.

*March 18, 2022 Robbery*

On March 18, 2022, at approximately 4:52 a.m., Foers Pharmacy in Rockville, Maryland was burglarized. Surveillance video reflected that two suspects entered the store using a Halligan tool. The suspects emptied a trash can in the pharmacy and used it to conceal stolen controlled substances including Promethazine-Codeine Syrup (Schedule 5)

Mr. Blount is connected to these offenses through cellphone evidence, reflecting calls exchanged between him and a co-conspirator prior to the offenses, followed by cellsite location information placing him in the vicinity of the robbery at the approximate time of the robbery.

*March 21, 2022 Robbery*

On March 21, 2022, at approximately 3:00 a.m., Wellbeing Care Pharmacy in Rockville, Maryland was burglarized. Surveillance video reflected that two suspects entered the store using a Halligan tool. The suspects proceeded to steal hundreds of Oxycodone pills (Schedule 2) as well as fentanyl patches (Schedule 2).

Mr. Blount is connected to these offenses through cellphone evidence, reflecting calls exchanged between him and a co-conspirator prior to the offenses, followed by cellsite location information placing him in the vicinity of the robbery at the approximate time of the robbery. Additionally, a photograph on Mr. Blount's iCloud dated March 22, 2022, reflects Mr. Blount holding a large stack of cash. As with the other offenses, hours after the robberies, Mr. Blount's co-conspirator exchanged text messages with an apparent drug distributor where he discusses the price of various pills.

*April 12, 2022 Robberies*

On April 12, 2022, at approximately 2:45 a.m., Delmarva Pharmacy in Salisbury, Maryland was burglarized. The two burglars—Herold Dorman and Deaundre Blount—were caught in the act. A Halligan tool consistent with that observed in the previous robberies was recovered along with clothing from both suspects consistent with that used in the previous robberies. In the burglars' vehicle, law enforcement recovered Mr. Blount's cellphone, ski masks, burglary tools, and plastic bags

**Mr. Blount's Jewelry Robberies**

On August 15, 2012, Mr. Blount stole two watches from Ream Jewelers in Pennsylvania. He pled guilty to that offense. On October 2, 2012, Blount, Harold Dorman (one of Mr. Blount's co-defendants in the 2022 robbery spree), and another man entered White Jewelers in York, Pennsylvania, and attempted to rob the store. One of the men was armed with a handgun. Mr. Blount pled *nolo contendere*. On September 6, 2012, Mr. Blount and another man entered Kings Jewelry in Alexandria, Virginia, smashed the glass of two display cases using a sledgehammer, and stole three Rolex watches, before fleeing the store. Mr. Blount pled guilty to this offense. On August 8, 2012, Mr. Blount entered Zales Jewelry in Dover, Delaware, and grabbed multiple pairs of diamond earrings before fleeing. Mr. Blount pled guilty to that offense. On March 10, 2020, Mr. Blount entered Jared's Gallery of Jewelry in Montgomery County, Maryland and, posing as a customer, stole a pair of diamond earrings. Mr. Blount pled guilty to this offense. On November 17, 2020, Mr. Blount entered Zales Jewelry in Bell Flower, California and stole a diamond bracelet. He was caught attempting to flee. Mr. Blount pled guilty to this offense.

### *Mr. Mitchell's July 2016 and February 2017 Robberies*

On July 21, 2016, Mr. Mitchell and another defendant entered an AT&T Store located in Rockville, Maryland.  The two stole the display phones valued at approximately $1,300.  Then, on June 30, 2016, Mr. Mitchell and another defendant entered a second AT&T store in Rockville, Maryland.  They stole Apple products valued at approximately $1,900.  As he was leaving the store, Mr. Mitchell pushed the store owner to the ground.  The defendants fled in a vehicle.  Mr. Mitchell pled guilty to this offense.

On December 10, 2016, Mr. Mitchell and another defendant entered the T-Mobile store located at 801 15th Street NW.  The two men began taking display models of cellphones from the counter, including multiple Apple products.  Three days later, Mr. Mitchell and another defendant entered a Best Buy located at 4500 Wisconsin Avenue NW.  There, they attempted to steal display phones but were stopped.  Mr. Mitchell was stopped on scene but allowed to leave before later being arrested.  Mr. Mitchell pled guilty to this offense.

### *Mr. Branham's Firearm Offenses*

On September 13, 2010, Mr. Branham was stopped during a traffic stop and found in possession of a firearm.  He pled guilty to Carrying a Pistol Without a License.

On September 27, 2010, Mr. Branham and two other suspects robbed and carjacked a man.  One of the men had a firearm in his waistband which he displayed to the victim.  Mr. Branham pled guilty to that offense.

### *Photographs of Firearms on Ms. Gause's Phone*

Ms. Gause's phone contains multiple images of firearms, some of which appear to be held in her own hand during the pendency of the conspiracy:

### *Sent on March 5, 2021*



*Posted to Instagram on December 7, 2020*



<u>December 7, 2020</u>



### *June 26, 2020 Shooting of Inman by Neal*

On June 26, 2020, Floyd Neal fired two rounds at his wife's vehicle. Shell casings were recovered from the scene. Following the April 1, 2021 Manassas, Virginia pharmacy robbery, where Mr. Branham and Mr. Neal were arrested, law enforcement recovered a 9mm Hipoint C9 pistol. That pistol was test fired and matched the casings recovered from the June 26, 2020 shooting.

### *Messages and Digital Evidence Concerning Target Identification*

Members of this conspiracy exchanged messages, conducted internet searches, and had saved entries concerning many unconsummated robbery targets during the lifespan of the conspiracy. For example, Ms. Gause's cellphone contained an entry from May 8, 2020, stating "Hudacko's 861 broadway, Bayonne,Nj 07002," which matches the address of Hudacko's Pharmacy in New Jersey.

Ms. Gause's cellphone reflected that on May 8, 2020, Mr. Henderson sent Gause the message "503 S Cherry Grove Ave, Annapolis, MD 21401," which is the address of a CVS pharmacy. Later in the same exchange, Ms. Gause told Mr. Henderson: "Come out." Historical cell site location information revealed that around the time Ms. Gause sent Mr. Henderson the above message, Ms. Cause's device was located in close proximity to the CVS Pharmacy at 503 South Cherry Grove Avenue, Annapolis, Maryland.

Ms. Gause's, Mr. Henderson's, and Mr. Mitchell's cellphones reflected numerous searches for pharmacies and cellphone stores around the East coast including Maine, Massachusetts, Pennsylvania, Maryland, Connecticut, the Carolinas, New Jersey, Pennsylvania, Maryland, and Washington, D.C. Mr. Henderson also searched "how to unlock sliding store doors." Additionally, Mr. Mitchell and Ms. Gause exchanged messages and images of potential targets, such as an image of the front of a Verizon store, images of prescription bottles of Promethazine with Codeine

### *Messages Concerning the Sale of Narcotics*

In addition to messages reflecting target identification, Gause and Mitchell in particular exchanged numerous messages reflecting attempts to sell narcotics and cellphones. For example, hours after the May 9, 2020 Neptune, New Jersey robbery, Ms. Gause exchanged the following messages with a known drug dealer:

14

| # | Date | From | To | Content |
|---|------|------|-----|---------|
| 1 | 9 May 2020 | MALLET | GAUSE | What u want for 30s |
| 2 | 12 May 2020 | MALLET | GAUSE | Wya |
| 3 | 12 May 2020 | GAUSE | MALLET | Ne |
| 4 | 12 May 2020 | MALLET | GAUSE | How much the 15s |
| 5 | 12 May 2020 | GAUSE | MALLET | 15 |
| 6 | 12 May 2020 | MALLET | GAUSE | Let me get 10 10s for 85? |
| 7 | 12 May 2020 | GAUSE | MALLET | I can't do it bro I ain't got no room |
| 8 | 12 May 2020 | MALLET | GAUSE | Let me get a 4 15s; I need 6 wya |
| 9 | 13 May 2020 | MALLET | GAUSE | Wya |
| 10 | 13 May 2020 | GAUSE | MALLET | Nomore 15's |
| 11 | 14 May 2020 | GAUSE | MALLET | 222 Kst sw |
| 12 | 14 May 2020 | MALLET | GAUSE | 20min; 6min |
| 13 | 14 May 2020 | GAUSE | MALLET | Bet |
| 14 | 14 May 2020 | MALLET | GAUSE | How much they is |
| 15 | 15 May 2020 | MALLET | GAUSE | Wassup crazy; Gun show tomorrow |
| 16 | 15 May 2020 | GAUSE | MALLET | Call me |
| 17 | 16 May 2020 | MALLET | GAUSE | What u got; 7.5s? |
| 18 | 16 May 2020 | GAUSE | MALLET | Gone |
| 19 | 24 May 2020 | MALLET | GAUSE | Got them Addies? |
| 20 | 24 May 2020 | GAUSE | MALLET | Yeah |
| 21 | 24 May 2020 | MALLET | GAUSE | What mg u got? Are they IR or ERAn how much |
| 22 | 24 May 2020 | GAUSE | MALLET | Both every mg |
| 23 | 24 May 2020 | MALLET | GAUSE | How much u want |
| 24 | 24 May 2020 | GAUSE | MALLET | Which mg u want? |
| 25 | 24 May 2020 | MALLET | GAUSE | How much the 10 and 20 |
| 26 | 24 May 2020 | GAUSE | MALLET | Call me |

Ms. Gause exchanged similar messages with the same individual throughout the pendency of the conspiracy including on February 18, 2021, four days after the February 14, 2021 robbery of a pharmacy in Henrico, Virginia.  Additionally, Gause exchanged similar messages with a cellphone store known to re-sell phones following the robbery of a cellphone stores.

| Date | Time | From | To | Message |
|---|---|---|---|---|
| 1/13/2021 | 12:52 PM | GAUSE | BAWA | **[Image of stolen phones]** |
| 1/13/2021 | 1:00 PM | GAUSE | BAWA | *4 min 5se* |
| 1/13/2021 | 1:01 PM | GAUSE | BAWA | *4 mini* |
| 1/13/2021 | 1:02 PM | BAWA | GAUSE | *That's all ?* |
| 1/13/2021 | 1:06 PM | GAUSE | BAWA | *Yes* |
| 1/13/2021 | 1:07 PM | GAUSE | BAWA | *It wasn't what we thought* |
| 1/13/2021 | 1:07 PM | BAWA | GAUSE | *Ok what the breakdown $* |
| 1/13/2021 | 1:10 PM | GAUSE | BAWA | *All Verizon* |
| 1/13/2021 | 1:11 PM | GAUSE | BAWA | *3200* |
| 1/13/2021 | 1:11 PM | BAWA | GAUSE | *How much was a piece for mini* |
| 1/13/2021 | 1:13 PM | GAUSE | BAWA | *500* |

Ms. Gause and Mr. Mitchell also exchanged images reflecting the same. For example,

Ms. Gause sent Mr. Mitchell the following:





## **ARGUMENT**

**I.    THE GOVERNMENT'S PROPOSED OTHER CRIMES EVIDENCE IS ADMISSIBLE UNDER 404(B).**

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts"

is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including – but not limited to – motive, intent, plan, knowledge, and absence of mistake. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). As the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929. Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Bowie*, 232 F.3d at 929-30 (*quoting United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

Alternatively, when evidence is offered as direct evidence of a fact in issue and not as circumstantial evidence requiring an inference as to the character of the accused, the evidence is "intrinsic," rather than "extrinsic," and the Court need not engage in a Rule 404(b) analysis. *See United States v. Badru*, 97 F.3d 1471, 1474-75 (citing 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239, at 450 (1978)). "In other words, if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic. In addition, some uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." *Bowie*, 232 F.3d at 929.

There is a two-pronged test for determining whether evidence of prior crimes is admissible under 404(b). *First*, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted). *Second*, the evidence is subject to the balancing test

of Federal Rule of Evidence 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id*. Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger substantially outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original).

Admission of 404(b) evidence is permitted in the Government's case-in-chief, regardless of whether that issue is even disputed by the defense. *See Bowie*, 232 F.3d at 932. Indeed, even "a defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element, even if the defendant's proposed stipulation is unequivocal, and even if the defendant agrees to a jury instruction of the sort mentioned in our earlier opinion." *Crowder II*, 141 F.3d at 1209.

Finally, in a criminal case, the prosecution is required to "provide reasonable notice" to the defense of 404(b) evidence it intends to offer at trial, including "the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." This motion provides the requisite notice.

## A. The August 2020 Midlothian Robbery is Admissible to Gause's and Mitchell's Identity, Knowledge, and Intent.

On August 5, 2020, Mitchell and Gause robbed a Walgreen's Pharmacy in Midlothian, Virginia. The robbery followed the same *modus* operandi as the other robberies charged in the case. The suspects entered the pharmacy, jumping the counter, grabbed a pharmacist, and

19

proceeded to steal thousands of dollars of narcotics. The evidence reflects that Gause and Mitchell acted in similar fashion as the other charged robberies. Specifically, Gause's device reflects travel from Washington, D.C. to the robbery location and back. Mitchell's device was used to search the address of the robbery location and Gause called the pharmacy (presumably to check if it was open). Further, following the robbery, Gause called the same known drug dealer that she called on other occasions in apparent attempts to offload drugs.

"Rule 404(b) specifically lists 'identity' as one of the purposes for which evidence of "other crimes, wrongs, or acts" may be admissible." *United States v. Lawson*, 410 F.3d 735, 741 (D.C. Cir. 2005). And courts routinely allow proof of identity to come in the form of *modus operandi* evidence. Specifically, "that the prior and charged offenses are so strikingly similar that the same person or persons probably had a hand in both." *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (affirming admission of *modus operandi* evidence to prove identity).

For example, in *United States v. Lawson*, the D.C. Circuit found that an uncharged robbery and a charged robbery "shared sufficient characteristics to permit an inference of identity," and therefore the uncharged robbery was admissible under Rule 404(b). 410 F.3d 735, 741 (D.C. Cir. 2005). There, both robberies were "executed by a taller man wielding a distinctive silver-hammered handgun and a shorter man who collected money from the tellers, and the taller individual appeared to wear the same clothes during both crimes." *Id.* Based on these similarities, the Circuit found that "if the jury believed, . . . that Lawson had committed the [uncharged] robbery, the similarities between the offenses made it more likely that he was one of the [charged] robbers as well." *Id.*

Here, the Midlothian robbery follows the same pattern as the other robberies, it was the same type of target as the other pharmacy robberies, Gause and Mitchell played the same roles,

20

and the conduct matches the prior robberies. Therefore, the evidence that Gause and Mitchell robbed the Midlothian pharmacy tends to show that they robbed the other charged pharmacy robberies. *See United States v. Pindell*, 336 F.3d 1049, 1057 (D.C. Cir. 2003) (finding that evidence of other uncharged robberies was relevant to identity and intent, "to rebut the suggestion that [the defendant] was present at the scene of the robberies by mistake or accident."

The Midlothian robbery is also relevant to prove Gause's and Mitchell's intent in robbing pharmacies was for purposes of distribution, rather than personal use. The Government has charged the defendants in a conspiracy to possess with the intent to distribute the various scheduled narcotics that were stolen from pharmacies. That Gause and Mitchell robbed many pharmacies, including the Midlothian pharmacy, tends to suggest distribution given the sheer number of stolen narcotics. This is further corroborated by Gause's text message to a known drug dealer shortly after the robbery. Taken with Gause's other messages to this same dealer, the inference is clear that Gause and Mitchell intended to distribute the stolen narcotics.

**B. Mr. Blount's and Mr. Mitchell's Other Robbery Convictions and Charges are Admissible as Relevant to Identity, Knowledge, and Intent.**

Evidence that Mr. Blount committed a series of jewelry robberies, and a series of pharmacy robberies is relevant to prove that Mr. Blount committed the robberies charged here. Similarly, evidence that Mr. Mitchell committed a series of cellphone store robberies is similarly relevant. Both are proof of identity, as well as Blount's and Mitchell's of how to commit these types of robberies, and ability to offload the proceeds of these robberies.

As noted above, our courts commonly admit evidence of prior robberies as evidence of identity. The fact that both Blount and Mitchell have committed other spree-style robberies, across multiple jurisdictions, tends to show that they are the individuals who committed the spree-style robbery across multiple jurisdictions charged here. That inference is particularly strong with

21

respect to Mr. Blount's robbery of pharmacies and Mr. Mitchell's robbery of cellphone stores. Following the robberies charged in this case, Mr. Blount committed a series of pharmacy robberies, stealing some of the same scheduled narcotics that were stolen in this case. As in this case, in the Maryland case, Mr. Blount's co-defendant then offloaded the drugs to a third party. This tends to indicate that Mr. Blount's possession of the stolen narcotics was with the intent to distribute and rather than for personal use.

The same is true of Mr. Mitchell's previous cellphone robberies. Mr. Mitchell robbed multiple cellphone stores, targeting the same types of phones that he targeted here: Apple products. Mr. Mitchell presumably had some means of selling those products, as he did here through Ms. Gause's phone plug. Indeed, there will be evidence in this case that Mr. Mitchell contacted Ms. Gause's phone plug shortly after the May 4, 2021 AT&T robbery. Therefore, these prior robberies are relevant to identity and to intent.

### C. Mr. Branham's Firearm Convictions and Ms. Gause's Photographs of Firearms are Relevant to Prove the Charged Firearm Offenses.

Mr. Branham's prior convictions for the possession or carrying of firearms is relevant to prove that he was aware or at least that it was reasonably foreseeable to him that members of the conspiracy would carry firearms during these offenses. So too are photographs on Ms. Gause's phone reflecting her possession of or access to firearms.

The Government is required to prove that knowledge with respect to the violations of 18 U.S.C. § 924(c) pending against Mr. Branham (Count Fifteen) and Ms. Gause (Counts Seventeen, Nineteen and Twenty-One). Courts routinely permit the admission of evidence that a defendant possessed a firearm on other occasions as relevant to prove the requisite intent or knowledge for a violation of 18 U.S.C. 924(c). *See, e.g.*, *United States v. Cassell*, 292 F.3d 788, 793 (D.C. Cir. 2002) (affirming trial court's admission of prior gun possession as relevant to knowledge and

intent element of 924(c) charge); *United States v. McCarson*, 527 F.3d 170, 173 (D.C. Cir. 2008) (same); *United States v. Bell*, 795 F.3d 88, 99 (D.C. Cir. 2015) (finding evidence of prior murder with a firearm "admissible to show use of and familiarity with firearms.")

Here, the fact that Mr. Branham has previously carried firearms, and participated in an armed robbery, tends to suggest that the firearms for which he is charged here were carried knowingly. Mr. Branham is aware—better than most—that when people engage in robberies, they often carry firearms. He participated in a robbery and carjacking where either he or one of his co-defendants brandished a firearm at the victim. Therefore, at the very least, it was reasonably foreseeable to Mr. Branham that either he or his co-defendants would need or carry a firearm during the charged offenses.

For the same reasons, the photographs on Ms. Gause's phone, particularly those in which she appears to be in possession of firearms, reflects her access to and familiarity with firearms. It is evidence of her knowledge of how to acquire firearms and tends to indicate that she was not accidentally or mistakenly part of a conspiracy that employed firearms to commit offenses. It tends to show that it was reasonably foreseeable to Ms. Gause that firearms would be involved in these offenses.

### D. Mr. Neal's Shooting at Inman is Relevant to Prove Identity.

Mr. Neal's June 2020 shooting at his wife's vehicle is admissible as proof of his identity. That Mr. Neal fired the Hipoint firearm at his wife in June 2020, tends to indicate that he was in possession of the same firearm less than one year later in Manassas, Virginia. While Mr. Neal has pled guilty, by tying Mr. Neal to the firearm, given the evidence tying Mr. Neal's and Mr. Branham's joint commission of these robberies, this evidence tends to indicate Mr. Branham's awareness that a firearm would be and was used during the Manassas robbery.

In *United States v. Benford*, the Eleventh Circuit affirmed the admission of similar intrinsic evidence. 479 Fed. Appx. 186 (11th Cir. 2011). There, the defendant sought exclusion under Rule 404(b) of a photograph from social media of the defendant holding the same firearms he was charged with possessing. *Id*. at 191-92. The Court held that the "photographs were not extrinsic evidence" because "this evidence was directly probative of [the defendant's] knowing possession of the very weapons charged in the indictment." *Id*. at 191-92; s*ee also United States v. Alexander*, 356 U.S. App. D.C. 299, 309-10, 331 F.3d 116, 126-27 (2003) (finding 911 call indicating that defendant had a firearm approximately 20 to 30 minutes before the arrest for illegal possession of a firearm was intrinsic admissible evidence on a felon-in-possession charge). So too here.

Even if the Court were to find the prior possession of this firearm to be extrinsic evidence, it remains admissible. The Government has properly provided notice of its intent to admit this evidence in advance of trial, and the prior possession is offered for a permissible purpose. As set forth above, this prior possession tends to show that Mr. Neal was in possession of a firearm during the Manassas robbery and, therefore, that Mr. Branham was aware of that fact.

### E. The Identification of Additional Targets and Messages Concerning the Sale of Narcotics and Cellphones is Admissible Intrinsic Evidence.

As noted above, the conspirators in this case exchanged multiple messages and images with each other concerning additional robbery targets. Additionally, they communicated with a known drug dealer and a known phone re-seller. All these messages are intrinsic evidence of the two charged conspiracies. The identification of additional targets that may not have been robbed is evidence of intent, knowledge, and even membership in this conspiracy. That Gause, Mitchell, and Henderson were communicating about additional targets to rob tends to show that they joined this conspiracy knowingly and shared the intent to, in fact, rob stores. Further, the fact that they were communicating with each other indicates their membership and roles in the conspiracy.

24

The communications in which Gause and Mitchell engage in attempts to sell the proceeds of the robberies is likewise admissible evidence of the conspirators' intent, knowledge, and membership in the conspiracy. Gause's communications following pharmacy robberies where she discusses the price of pills similar to those stolen and appears to sell those pills indicates that the possession of the stolen narcotics by all members of the conspiracy was for purposes of distribution rather than personal use. Put simply, Gause's distribution of narcotics is evidence that she intended to distribute narcotics. Similarly, Gause's and Mitchell's communications and visit with a known phone re-seller in which they appear to discuss specific phones stolen during some of the robberies reflects the intent and purpose of the robbery conspiracy, as well as Gause's and Mitchell's knowing participation and membership in that conspiracy

Even if the Court were to find the prior possession of this firearm to be extrinsic evidence, it remains admissible. The Government has properly provided notice of its intent to admit this evidence in advance of trial, and the prior possession is offered for a permissible purpose. As set forth above, this prior possession tends to show that Mr. Neal was in possession of a firearm during the Manassas robbery and, therefore, that Mr. Branham was aware of that fact.

## F. The Probative Value of the Proffered 404(b) Evidence is Not Substantially Outweighed by Any Prejudicial Effect.

Evidence admissible under Rule 404(b) is subject to the restrictions of Rule 403. *See United States v. Moore*, 732 F.2d 983, 987 (D.C. Cir. 1984). In this case, the highly probative value of the Government's proffered 404(b) evidence is not substantially outweighed by potential unfair prejudice to the defendant. "The prejudice that the court must assess is the prejudice that lies in the danger of jury misuse of the evidence." *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995). "While there is always a risk that jurors will misuse evidence of this type to veer into an impermissible propensity inference, this risk, absent 'compelling or unique evidence of

25

prejudice'…'cannot give rise to a per se rule of exclusion.'" *United States v. Harris*, No. CR 19-358 (RC), 2020 WL 6484311, at *3 (D.D.C. Nov. 4, 2020) (quoting *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007)).

There is no compelling or unique evidence of unfair prejudice in this case, let alone any that could not be cured by a limiting instruction. The proffered evidence involves crimes no more serious than the crimes charged here. There is nothing particularly inflammatory or prejudicial about additional pending robberies, particularly because there are no allegations of violence with respect to those robberies. Any remaining risk of unfair prejudice can easily be cured with a limiting instruction by the court "instructing the jury to consider the evidence only for its proper purpose." *Mitchell*, 49 F.3d at 777; see also *McCarson*, 527 F.3d at 174 ("Where, as here, there is no compelling or unique evidence of prejudice, we deem such a limiting instruction sufficient to protect a defendant's interest in being free from undue prejudice by virtue of his prior conviction(s) being put into evidence.") (internal citations omitted).

The Government has demonstrated permissible non-propensity purposes for offering the proffered 404(b) evidence. This evidence is powerfully probative and the weight of this evidence is not substantially outweighed by potential unfair prejudice to any defendant. Accordingly, the Government should be permitted to introduce this evidence at trial.

## II.    SHOULD THE DEFENDANTS TESTIFY, THEY CAN BE IMPEACHED WITH THEIR PRIOR CONVICTIONS.

Rule 609 of the Federal Rules of Evidence allows "for the admission of a defendant's prior convictions for purposes of impeachment, so long as the 'crime . . . was punishable by death or by imprisonment for more than one year' (that is, it was a felony), and 'the probative value of the evidence outweighs its prejudicial effect." *United States v. Ford*, 15-cr-25 (PLF), 2016 WL 259640, at *7 (D.D.C. Jan. 21, 2016) (quoting *United States v. Moore*, 75 F. Supp. 3d 444, 453

(D.D.C. 2014) and Fed. R. Evid. 609(a)(1)). In addition, the Rule requires the admission of convictions, even for crimes where the punishment is less than one year if the conviction for the crime required proof of "a dishonest act or false statement." Fed. R. Evid. 609(a)(2). The Rule also sets a higher bar for felonies where "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). In those instances, admission is still appropriate if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). As our Court of Appeals has observed, Rule 609 "stresses admissibility." *United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980). "Courts should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary." *Id.*

Should Ms. Gause testify, the Government intends on impeaching her with the following convictions:

- Grand Larceny, December 7, 2016 (Fairfax County, Virginia GC16195587-00)

- Robbery, January 15, 2023 (Anne Arundel, Maryland C-02-CR-21-000954)

Should Mr. Mitchell testify, the Government intends on impeaching him with the following convictions:

- Robbery, January 7, 2022 (Anne Arundel, Maryland C-02-CR-21-000954)

- First Degree Theft, November 1, 2018 (D.C. Superior Court 2016 CMD 018169)

- Theft: $1,000 to Under $10,000, September 5, 2019 (Rockville, Maryland 0D00362768)

- False Identify to Law Enforcement, Obstruct Justice Without Threats, July 23, 2012 (Arlington, Virginia GC12002327-00)

- Public Records: Forgery, December 4, 2015 (Arlington, Virginia CR12000968-00)

Should Mr. Branham testify, the Government intends on impeaching him with the following convictions: Abduction by Force and Robbery, April 7, 2022 (Prince William, Virginia CR21001326-00).

Should Mr. Blount testify, the Government intends on impeaching him with the following convictions:

- Fraud – Identity Fraud Avoid Prosecution, September 16, 2021 (Harford County D-09-CR-21-002254)

- Grand Theft, April 12, 2021 (Orange County, California 21HF0017)

- Grand Theft, November 30, 2020 (Bell Flower, California VA15470201)

- Theft $1,500 or Greater September 6, 2019 (Kent County, Delaware 1208024189)

- Larceny Over $200, Conspiracy to Commit Larceny, July 29, 2019 (Alexandria, Virginia CF13000236)

As an initial matter, Mr. Mitchell's convictions for False Identification and Obstruction and Forgery must be admitted because each required proof of a dishonest act or false statement. Fed. R. Evid. 609(a)(2). Virginia Code § 19.2-82.1 criminalizes providing false identification to law enforcement: "Any person who falsely identifies himself to a law-enforcement officer with the intent to deceive the law-enforcement officer as to his real identity after having been lawfully detained and after being requested to identify himself by a law-enforcement officer, is guilty of a Class 1 misdemeanor." The code requires proof of a false statement (falsely identifying oneself) as well as the intent to deceive. Therefore, this offense required proof of a dishonest act or false statement.

The same is true for Mr. Mitchell's forgery convictions. Virginia Code § 18.2-168 makes it a crime for "any person [to] forge a public record, or certificate, return, or attestation, of any

28

public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, *knowing the same to be forged*." (emphasis added).  In other words, Mr. Mitchell had to knowingly engage in the dishonest act of forging a record and then using or attempting to use that forged record while aware that the record was false.  Courts have recognized that similar types of convictions are admissible under this standard. *See, e.g.*, *United States v. Magoti*, 352 Fed. Appx. 981, 985 (6th Cir. 2009) (applying this standard to "uttering"); *United States v. Tracy,* 36 F.3d 187, 192 (1st Cir. 1994) (same) ; *United States v. Coats*, 652 F.2d 1002, 1003 (D.C. Cir. 1991) (suggesting that "uttering" is "a crime involving 'dishonesty or false statement'"); *United States v. Moore*, 75 F. Supp. 3d 444, 454 (D.D.C. 2014) (admitting uttering conviction under Rule 609).

With respect to all the remaining convictions, each defendant was released within the ten-year threshold for admissibility.  Thus, the "more stringent limitations" that "govern the use of prior convictions that are more than ten years old" and require a finding that the probative value *substantially* outweighs its prejudicial effect are inapplicable. *Moore*, 75 F. Supp. 3d at 453; Fed. R. Evid. 609(b).  These convictions must be admitted for impeachment if the probative value of the conviction outweighs any prejudicial effect. Fed. R. Evid. 609(a)(1)(B).[2]

---

[2] The Government has noticed many of these convictions under Rule 404(b).  Additionally, one of the robbery convictions for each of Ms. Gause, Mr. Mitchell, and Mr. Branham are charged in this case.  To the extent these convictions are admitted during the Government's case-in-chief, the Court need not even conduct a prejudice analysis for that conviction. *United States v. Ford*, 2016 WL 259640, at *7-9 (D.D.C. Jan. 21, 2016); *see e.g.*, *Moore*, 75 F. Supp. 3d at 456; *United States v. Chauncey*, 420 F.3d 864, 874 (8th Cir. 2005) ("Here, the prior conviction already was admitted under Rule 404(b), and the danger of unfair prejudice by repetition of the evidence was negligible."); *United States v. Lattner*, 385 F.3d 947, 961 (6th Cir. 2004) ("[T]he prejudicial effect of the evidence was minimal, as the prosecution had already properly introduced, under [Rule] 404(b), evidence of [defendant's] prior involvement in drug transactions."). However, should the Court deny the government's motion to admit evidence regarding that conviction as

In *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (en banc), the D.C. Circuit conducted an exhaustive review of the legislative history of Rule 609 and noted that "Congress believed that all felonies have some probative value on the issue of credibility." The D.C. Circuit concluded as a result that that "all felony convictions are probative of credibility to some degree." *Id.* at 1062 (emphasis omitted).

In assessing whether the probative value of a prior conviction outweighs its prejudicial effects, the D.C. Circuit has considered the following factors: 1) the nature of the crime, 2) the time of the conviction, 3) the similarity of the past crime to the charged crime, 4) the importance of the defendant's testimony, and 5) the degree to which the defendant's credibility is central to the case. *United States v. Jackson*, 627 F.3d 1198, 1210 (D.C. Cir. 1980).

*First*, all of the remaining noticed crimes are robberies or thefts. These types of crimes are indisputably relevant to his credibility because a "robbery conviction, involves theft and indicates a conscious disregard for the rights of others." *United States v. Lipscomb*, 702 F.2d 1049, 1072 (D.C. Cir. 1983). Taking something from another—in essence falsely representing that you own and control something you do not—sounds in dishonesty and reflects on each defendant's credibility.

*Second*, the close proximity of all of these convictions weights in favor of admission. Most of these convictions are from around the same time as the charged conspiracy and none are outside the ten-year windows.

*Third*, the prior convictions are somewhat similar to the charged offenses. While courts have found that same-crime convictions may be prejudicial, that fact is not dispositive. *See United*

---

Rule 404(b) evidence, for the reasons discussed below, the Government should nevertheless be permitted to impeach each defendant with those convictions.

*States v. Isaac*, 449 F.2d 1040, 1043 (D.C. Cir. 1971) (allowing impeachment with one, but not two, prior convictions of the same crime); *Jefferson*, 2021 WL 6196988, at *5 (admitting prior conviction similar to charged conduct given other factors). For example, one D.C. Circuit panel noted that close similarity may actually increase probative value under certain circumstances. *Lewis*, 626 F.2d 940. In *Lewis*, while on trial for multiple drug distribution counts, the defendant testified that he had never sold drugs and tried to convince the jury he was a "stranger to the use and sale of illegal drugs." *Id.* at 947. On cross-examination, the defendant was impeached by his admission that he had been convicted previously for the distribution of drugs. *Id.* at 948. The trial judge found that the denials "made his credibility an even more vital consideration in the trial" and added support for the judge's ruling admitting the prior conviction. *Id.* The D.C. Circuit concluded the admission of the prior conviction was reasonable noting the similarity between the prior conviction and crime at issue "does not render the prior conviction inadmissible" and "may even, as the judge found here, increase its probative value." *Id.* at 950. The Court went on to say a limiting instruction should be provided when the conviction is admitted and again in the final instructions. *Id.*

Here, each defendant may make similar denials that would render the similar nature of the prior robberies more probative to the issue of their credibility. Even absent these denials, these convictions should be admissible given the strength of the other factors and the ability to provide multiple limiting instructions as in *Lewis*. Accordingly, this factor weighs in favor of admission.

*Finally*, because the importance of each defendant's testimony and the degree to which each defendant's credibility is central to the case, both weigh in favor of admitting the prior convictions. As the D.C. Circuit has noted, "it is unfair and misleading to a jury, when credibility is at issue, to refuse to admit relevant evidence that is directly probative on that issue." *Id.* A

31

defendant's testimony has a significant effect upon a juror's evaluation of the crime and any defenses. *See Moore*, 75 F. Supp. 3d at 455 ("what [a defendant] might say in his own defense— e.g., the gun wasn't mine, the drugs were for personal use—could play a significant role in the jury's verdict. Hence, the probative value of [the defendant's] prior convictions is quite high."); *Jackson*, 627 F.3d at 1209-10 ("had [the defendant] chosen to take the stand his credibility would have been centrally in issue as it related to his 'flim flam' defense"). In this case, should these defendants testify, their testimony, and therefore credibility, would likely be central to their defense. These offenses require proof of intent and motive—the best evidence of which is in a defendant's mind. In other words, a defendant is likely to offer evidence regarding his purported lack of knowledge, intent, and motive, which the government will need to rebut. These prior convictions provide the jury with the necessary background and context to measure each defendant's credibility. Each tells the jury something slightly different about their credibility as a witness or, as one Court put it, "[f]rom the jury's point of view … each conviction knocks a brick from [the defendant's] credibility wall." *Moore*, 75 F. Supp. 3d at 456

Taken together, the five *Jackson* factors indicate the probative value of the prior convictions outweighs their prejudicial effects. These convictions all fall within the ten-year window and speak to the defendant's character for honesty. Moreover, because each defendant's intent is centrally at issue in this case and must necessarily be proven by circumstantial evidence, the jury is entitled to have all of the facts relevant to weighing their credibility. Any prejudice can be cured by an appropriate cautionary instruction to the jury by the Court. *See Lewis*, 626 F.2d at 948.

For these reasons, the government should be allowed to use each defendant's prior convictions pursuant to Rule 609.

## **CONCLUSION**

Accordingly, the government respectfully requests that the Court permit at trial the introduction of its proffered other crimes evidence and permit the government to impeach the defendant in with his prior convictions.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     _/s/ Cameron A. Tepfer_____
Cameron A. Tepfer
N.Y. Attorney No. 5248208
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov