UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 23-cr-190 (ABJ) |
| ASHLEY GAUSE, et al., : | |
| : | |
| DEFENDANTS. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO SUPPRESS TOWER DUMP RECORDS**

The United States of America submits this opposition to the defendants' motion[1] to suppress tower dump records obtained pursuant to four search warrants (ECF No. 167). The defense argues that (1) obtaining tower dump records from cellphone providers constitutes a search pursuant to the Fourth Amendment; and (2) the warrants lacked probable cause and particularity and should therefore be suppressed. *Id.* The defense arguments must fail. First, the warrant did not infringe defendants' Fourth Amendment interests under *Carpenter v. United States*, 138 S. Ct. 2206 (2018), because *Carpenter* only recognized a privacy interest in long-term comprehensive location information. Thus, the tower dump records provided to law enforcement did not constitute a search subject to the protections of the Fourth Amendment. Second, even assuming the disclosure of tower dump records *was* a search within the purview of the Fourth Amendment, law enforcement obtained a search warrant supported by probable cause and identified the records sought with sufficient particularity. Finally, even if the Court determines that the search warrant

---

[1] On June 13, 2025, defendant D'Marrell Mitchell filed the instant motion to suppress tower dump records. Shortly after, defendants Deaundre Blount, Terrance Branham, and Ashley Gause moved to join the motion, among others. ECF Nos. 169, 170, and 172. On June 17, 2025, the Court granted their motions to join.

1

did not pass muster under the Fourth Amendment, suppression is not appropriate because the good-faith doctrine applies. For that and the following reasons, the defendants' motion must be denied.

## BACKGROUND

This case involves eighteen robberies of pharmacies and cellphone stores throughout the District of Columbia, Maryland, Virginia, and New Jersey, by overlapping combinations of Defendants Ashley Gause ("Gause"), D'Marrell Mitchell ("Mitchell), Terrance Branham ("Branham"), and Deaundre Blount ("Blount")[2] from May 2020 through May 2021. Members of the conspiracy, led by Gause and Mitchell, conducted research into potential store targets, drove sometimes significant distances to rob these stores, burst into the stores when they were thinly occupied, stole cellphones and narcotics, and then distributed the proceeds. Gause and Mitchell were the constants in the conspiracy, apparently recruiting others, in some cases younger men. The recruited individuals switched in and out of the conspiracy over time, oftentimes conducting the actual robberies while Gause and Mitchell remained in vehicles. Gause primarily served as the driver in these offenses but had connections with individuals who could resell phones and narcotics. Following the robberies, Gause would communicate with the sources and negotiate prices for the sale of the robbery proceeds.

*The FBI's Initial Investigation and the Tower Dump Records*

In November 2020, the Federal Bureau of Investigation ("FBI") was investigating a series of robberies that occurred earlier that month in the District of Columbia and Maryland. Law enforcement suspected a connection across the November robberies based on the similar *modus operandi*, including the appearance and clothing of the robbers, the suspect vehicle, the robbery targets, and the closeness in time. But law enforcement was unaware of the additional robberies

---

[2] Co-defendants Ashawntea Henderson, Floyd Neal, and Glenn Dolford have pled guilty.

2

occurring prior to November 2020 and none of the defendants charged in this case had yet been identified as suspects. On November 25, 2020, to identify individuals near the robbery locations at the times of the robberies, the FBI obtained four cell tower search warrants. *See* Exhibits A-D (Search Warrant Nos. 20-sc-3123, 20-sc-3124, 20-sc-3125, and 20-sc-3126). Each search warrant is substantively the same, but directed at a different provider, *i.e.*, Verizon, AT&T, T-Mobile, and Sprint (hereinafter "the Providers"). *Id.* The search warrants sought records associated with devices that interacted with cell towers in six different locations on specific days/times—that is, the cell towers associated with the robberies on the relevant dates/times. *Id.* The four warrants requested "records and information associated with communications to and from the following [cell towers] on the identified dates(s) and timeframe(s)":

| Cell Towers | Dates | Times (EST) |
|---|---|---|
| The cellular towers that provided cellular service to **721 D St. SE, Washington, D.C. 20003** 38.883606, -76.99529 | November 6, 2020 | 2:10 PM – 2:40 PM EST |
| The cell towers that provided cellular service to **5252 Wisconsin Ave. NW, Washington, D.C. 20015** 38.958897, -77.085181 | November 9, 2020 | 1:05PM – 1:40 PM EST |
| The cell towers that provided cellular service to **2460 Market St. NE, Washington, D.C. 20018** 38.921108, -76.954954 | November 11, 2020 | 11:10AM – 11:35AM EST |
| The cell towers that provided cellular service to **2027 North Capitol St. NE, Washington, D.C. 20002** 38.917758, -77.008719 | November 11, 2020 | 11:30AM-12:00PM EST |
| The cell towers that provided cellular service to **7311 Macarthur Blvd., Bethesda, MD 20816** 38.968783, -77.139 | November 12, 2020 | 7:45PM – 8:10PM EST |

3

| The cell towers that provided cellular service to **5301 Wisconsin Ave. NW, Washington, D.C.** 38.968783, -77.139 | November 17, 2020    5:50PM – 6:10PM EST |
|---|---|

*Id.* at Attachment A.

Attachment B of the warrants delineates the specific information sought, including: cellphone number and unique identifiers for each wireless device that interacted with the tower, the sector of the tower receiving the signal, the date/time/duration of the communication, and the type of communication. *Id.* at Attachment B. The warrants further detail the procedure law enforcement would follow to execute them: law enforcement would filter the data received to determine which devices fell within the scope of the warrants and seal any additional information—and would not access the sealed information without further order from the Court. *Id.* at Section III. Additionally, the affidavit provides that, "[t]he government will seize only information relevant to phones that used more than one tower identified by the government." *Id.* at 28.

The returns from the Providers consist of a list of devices that interacted with the cell towers servicing the areas of the November robberies at the date/times the robberies occurred. The devices are identified by cellphone number, International Mobile Equipment Identity ("IMEI"), and International Mobile Subscriber Identity ("IMSI").[3] Aside from the IMSI, no subscriber information was provided (*e.g.*, subscriber name or other personal identifying information).

The FBI received the returns on December 3, 2020 (Sprint), December 17, 2020 (Verizon), February 10, 2021 (T-Mobile), and July 27, 2021 (AT&T). In August 2021, FBI's Cellular

---

[3] An IMEI is a 15-digit tracking code that identifies specific mobile devices, similar to a serial number. An IMSI is a 15-digit tracking code that identifies the subscriber (as opposed to the device).

4

Analyst Survey Team ("CAST") reviewed the returns and identified one phone number ending in 7885 that interacted with multiple cell towers near each of the five robbery locations around the time of the robberies. The subscriber name was not provided as a part of the return. Thus, the FBI conducted additional research using open-source and law enforcement databases, which revealed that the phone number was associated with Gause. It was the discovery of Gause's phone number that led the FBI to initially connect the November robberies with the May 26, 2021 robbery of the CVS in Pasadena, Maryland, in which Gause and Mitchell were arrested.[4] The defense now challenges the constitutionality of the November 25, 2020 cell tower search warrants. ECF No. 167.

## APPLICABLE LEGAL STANDARD

The Fourth Amendment proscribes "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

A showing of probable cause "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). In the search warrant context, a showing of probable cause requires only a "fair probability that . . . evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An application for a search warrant "must demonstrate cause to believe that 'evidence is likely to be found at the place to be searched.'" *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017) (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)). In addition, there must be "a nexus . . . between the

---

[4] The government provides additional background on the connection of the November robberies to the May 26, 2021 robbery in its opposition to the defendants' motion to suppress cellphone evidence (ECF No. 190 at 1-5).

item to be seized and criminal behavior." *Id.* (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). Thus, "[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005) (quoting *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999)).

When a search warrant is challenged, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis . . . for conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (omission and alteration in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Affidavits in support of search warrants have "a presumption of validity," *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review," because "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

## ARGUMENT

The defense seeks to suppress third-party tower dump records pertaining to six locations associated with five robberies at specific dates/times. Their motion should be denied. First, defendants did not have a reasonable expectation of privacy in the Provider records and therefore no search was conducted under the Fourth Amendment. Even if the Court disagrees, the government obtained search warrants in an abundance of caution, which put forth ample probable cause and are sufficiently particular to satisfy the Fourth Amendment. Finally, should the Court

6

find any deficiency in the search warrants, suppression is inappropriate under the good-faith doctrine. The Court should deny the defendants' motions to suppress in their entirety.

I.      **Defendants Did Not Have A Reasonable Expectation of Privacy in Provider Location Data**

The Supreme Court has long recognized that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979). This includes business records of banks, *see United States v. Miller*, 425 U.S. 435, 440-443 (1976), and pen-register records of telephone numbers, *see Smith*, 442 U.S. at 742-744 (1979). Under this third-party doctrine, a bank or phone customer "assume[s] the risk that the company w[ill] reveal [the information] to the police." *Id.* at 744.

In *Carpenter*, however, the Supreme Court held that this doctrine did not apply to the government's collection of at least seven days' worth of cellsite location information ("CSLI") from a cellular provider. 585 U.S. at 310 & n.3; *see also id*. at 311 (noting that the government accessed 127 days of data). Although CSLI is created and maintained by third-party carriers, *id*. at 313, the Court "decline[d] to extend *Smith* and *Miller* to cover the[] novel circumstances" at issue, *id*. at 309. The Court emphasized "the unique nature of cell phone location records," which provide "a detailed and comprehensive record of the person's [physical] movements" resulting in "near perfect surveillance, as if [the government] had attached an ankle monitor to the phone's user." *Id*. at 309, 312. The Court thus held that the government's collection of CSLI documenting a particular phone's location over an extended period invades the user's reasonable expectation of privacy. *Id*. at 313.

In doing so, the Court emphasized that the information in *Carpenter* was "not about 'using a phone' or a person's movement at a particular time," but instead implicated "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." 585 U.S.

7

at 315. The Court further stated that its holding was "a narrow one" and did not cover "tower dumps" where the government seeks "a download of information on all the devices that connected to a particular cell site during a particular interval." *Id.* at 316; *see also United States v. Adkinson*, 916 F.3d 605, 611 (7th Cir. 2019) (stating that *Carpenter* "did not invalidate warrantless tower dumps (which identified phones near *one location* (the victim stores) at *one time* (during the robberies)").

Following *Carpenter*'s reasoning, the tower dumps here did not infringe upon the defendants' reasonable expectation of privacy because they did not comprehensively chronicle their movements.[5] Rather, the data revealed the presence of devices at six specific locations during discrete periods of time corresponding to the robberies. *See* Exhibits A-D. Society has long accepted that type of surveillance capacity—where law enforcement monitors a suspect "for a brief stretch"—as reasonable. *Carpenter*, 138 S. Ct. at 2117. They accordingly did not provide the sort of "all encompassing record of the holder's whereabouts" and "intimate window into a person's life" that concerned the Court in *Carpenter*. 138 S. Ct. at 2217; *see United States v. Lauria*, 70 F.4th 106, 129 n.12 (2d Cir. 2023) ("*Carpenter's* ruling gives no

---

[5] After *Carpenter*, courts have found such tower-dump information may be obtained through an order under the Stored Communications Act, 18 U.S.C. § 2703(d), and that doing so does not implicate the Fourth Amendment. *See, e.g.*, *United States v. Hammond*, 996 F.3d 374, 391-392 (7th Cir. 2021) (no Fourth Amendment search "where the officers only collected real-time CSLI for a matter of hours while the suspect travelled on public roadways"); *United States v. Walker*, No. 2:18-cr-37, 2020 WL 4065980, at *7-8 (E.D.N.C. July 20, 2020) (distinguishing *Carpenter*, finding that cell-tower location data for a particular place and time was properly obtained under § 2703(d) orders, and thus there was "no basis for attaching a Fourth Amendment interest to tower dump CLSI"); *United States v. Rhodes*, No. 1:19-cr-73, 2021 WL 1541050, at *2 (N.D. Ga. Apr. 20, 2021) ("[T]he Court concludes that the Government did not need a warrant to obtain the information [from the cell-tower dumps]."); *see also United States v. Yang*, 958 F.3d 851, 862 (9th Cir. May 4, 2020) (Bea, J., concurring) (stating that a query of a large automatic license plate recognition database that revealed only a single location point for defendant was not a search under Carpenter because "the information in the database did not reveal 'the whole of [the defendant's] physical movements.'").

reason to doubt that law enforcement officers lawfully could have obtained more limited cell tower information—for example, information simply telling whether [the defendant's] cell phone was in the vicinity of the Mahopac store at or near the time of the robbery—without need to show probable cause."); *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 341 (4th Cir. 2021) (en banc) (explaining that *Carpenter* does not govern "short-term tracking of public movements—akin to what law enforcement could do prior to the digital age") (cleaned up).

In the wake of *Carpenter*, numerous courts across the country held that accessing tower dump data is not a Fourth Amendment search. *See United States v. Pricop*, No. CR-22-02747-001-TUC-JCH (EJM), 2025 WL 918337 (D. Ariz. Mar. 26, 2025) (declining to extend *Carpenter* to tower dump records because they are "qualitatively different" from CSLI data as it relates to intrusiveness on the user's privacy); *United States v. Williams*, 741 F. Supp. 3d 642, 651 (E.D. Mich. 2024) ("Unlike the more intrusive surveillance of a person's location over a week's time, which the [*Carpenter*] Court found to be a search under the Fourth Amendment, the retrieval of the type of information collected in a tower dump is more akin to obtaining transactional records traditionally maintained by a third party—similar to old-fashioned, analog telephone toll records or banking records showing deposits and withdrawals in a monthly statement"); *United States v. Walker*, No. 2:18-CR-37-FL-1, 2020 WL 4065980, at *7 (E.D.N.C. July 20, 2020) (holding that *Carpenter* does not extend to tower dump data because the type of data sought is distinct in multiple respects, including the limited nature of the surveillance).

In *Pricop*, *Williams*, and *Walker*, the courts carefully parsed the distinction between tower dump data and continuous CSLI monitoring and noted the wide gulf between the

pervasiveness of tower dump data compared to CSLI monitoring.  That gulf precludes a finding that accessing such data constitutes a search.  *See Pricop*, No. CR-22-02747-001-TUC-JCH (EJM), 2025 WL 918337; *Williams*, 741 F. Supp. 3d at 651; *Walker*, No. 2:18-CR-37-FL-1, 2020 WL 4065980, at *7).

At least one district court judge has disagreed with *Pricop*, *Williams*, and *Walker*.  *See United States v. Spurlock*, No. 3:23-CR-00022-MMD-CLB-1, 2025 WL 1095512, at *6-7 (D. Nev. Apr. 11, 2025) (relying on *Carpenter* and *Smith* to hold that tower dump warrants are indistinguishable from geofence search warrants and are therefore "general" warrants prohibited by the Fourth Amendment).  In *Spurlock*, the court determined that tower dump data is "indistinguishable" to geofence data and agreed with the recent Fifth Circuit decision in *United States v. Smith*, 110 F.4th 817 (5th Cir. 2025) that such records are not only searches but are prohibited by the Fourth Amendment.  No. 3:23-CR-00022-MMD-CLB-1, 2025 WL 1095512 *7.  In *Smith*, the Fifth Circuit extrapolated *Carpenter* to geofence data, finding that geofence data similarly provides precise location data that is "invasive for Fourth Amendment purposes."  110 F.4th at 834 ("Of particular concern is the fact that a geofence will retroactively track anyone with Location History enabled, regardless of whether a particular individual is suspicious or moving within an area that is typically granted Fourth Amendment protection.").  But, as the Fifth Circuit recognized in *Smith*, tower dump records are qualitatively different from geofence records.  *See id.* at 833 (noting that geofence "technology provides more precise location data than either CSLI or GPS.").  Moreover, the Fifth Circuit's concerns regarding the intrusiveness of geofence data—the ability to track individuals over expansive periods of time, into the interior of their homes, into places of worship, or to other private or intimate locations—simply does not apply to the tower dump records obtained here.  *See id.* at 833-34.

10

In short, tower dump records are meaningfully different from geofence data, and this Court should reject *Spurlock* and follow the majority of other courts.

At bottom, the Providers observed and recorded the location of mobile devices when they interacted with specific cell towers at specific times, which coincided with the times/locations of the November robberies. The government's collection of that information from a third party did not impair the defendants' privacy interests and, accordingly, did not implicate the Fourth Amendment. On that basis alone, the Court should deny the defendants' motion to suppress.

## II. The Search Warrant Was Supported by Probable Cause And Sufficiently Particular Pursuant To The Fourth Amendment

Even if the Court determines that obtaining Providers' tower dump records constituted a search, the motion should be denied because the government obtained the records pursuant to lawful search warrants, each of which were supported by probable cause and were sufficiently particular. *See* Exhibits A-D.

*First*, the warrants meet the low bar of probable cause and establish a "fair probability that . . . evidence of a crime will be found in a particular place." *See* Exhibits A-D; *Gates*, 462 U.S. at 238. The basis for the warrants was the FBI's investigation into five robberies that occurred in early November 2020 in the District of Columbia and Maryland. *See* Exhibits A-D. The affidavits laid out the facts underlying each robbery, including: (1) summaries of victim and witness statements; (2) review of surveillance footage; and (3) descriptions of the suspects. *Id.* at 4-16. In addition to establishing probable cause for each individual robbery, the affidavits connect the robberies based on *modus operandi*. *Id.*

Moreover, in justifying the request for tower dump records, the affidavit provides background on cell towers and the type of data Providers collect. Specifically, the affiant states:

11

> In order to provide [cellular communications to the public], many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data . . . [the Providers] routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications.

*E.g.*, Exhibit A at 16-17. Given that the Providers maintain those types of business records, the affiant concludes that, based on his experience, requesting device information for the specific location, date, and times identified in Attachment A would reveal the devices present near the robberies. *E.g., id.* at 17-18. Not only that, but the affiant provides that law enforcement would only seize information related to devices present *in more than one* of the robbery locations, thus narrowing the scope of the inquiry and increasing the likelihood that the records sought would reveal a suspect as opposed to an innocent bystander in the wrong place at the wrong time. *E.g., id.* at 18.

Despite the details laid out in the affidavit, the defendants take issue that no specific suspects are identified in the search warrants. According to the defendants, unless the government identifies a specific suspect, the warrant cannot meet the particularity requirement of the Fourth Amendment. ECF No. 167 at 11 ("[W]hile the applications arguably presented probable cause to believe that the searches will reveal the location data of some unknown perpetrators of the crimes, this is not enough. The warrants did not present probable cause to believe that any particular individual—and certainly not Mr. Mitchell—committed any of the specific crimes described."). This argument advances an interpretation of the particularity requirement contrary to decades of Fourth Amendment precedent. For example, in *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978),

12

the Supreme Court upheld a warrant authorizing the search of a newspaper's office to seize photographs of a crime scene at which unidentified individuals had assaulted police officers. *See id.* at 551, 553-560. That warrant was analogous to the one here: it authorized seizure, from a third party not suspected of crime, of crime-scene evidence to identify perpetrators present at the scene of a crime. The Court held that "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.* at 556. If the Court adopts the defendants' view, law enforcement would be precluded from obtaining any search warrant unless a specific suspect is identified. That reading of the case law is untenable. *See id.*; *cf. United States v. Sherod, et al*, No. CR SAG-24-0120, 2025 WL 1736279, at *4 (D. Md. June 23, 2025) ("Requiring an investigator to have probable cause regarding which cellular service provider a suspect is using before the suspect has even been identified would, of course, preclude any such warrant from issuing, even with ample probable cause to believe that the series of warrants would identify the phone(s) the suspect(s) used during the burglaries.")

As it relates to search warrants, probable cause means "a fair probability" that the search will reveal evidence of a crime. *Gates*, 462 U.S. at 238; *Griffith*, 867 F.3d at 1271. Here, the warrants easily establish a fair probability that the tower dump records will reveal evidence of the robberies by requesting cell tower data for devices present at the locations of the robberies at the time the robberies occurred, and further narrowing the seizure to devices present *at more than one* robbery location. *See* Exhibits A-D; *United States v. James*, 3 F.4th 1102 (8th Cir. 2021) (holding that a tower dump warrant used to solve a series of robberies complied with the Fourth Amendment in part because the affidavit established a "fair probability" that the records would identify the robber); *Matter of Search of Info. Associated with Cellular Tel. Towers Providing Serv. to*

*[Redacted] Stored at Premises Controlled by Verizon Wireless*, 616 F. Supp. 3d 1, 10 (D.D.C. 2022) ("The nature, timing and location of the Subject's activities [Redacted], provide a substantial basis to believe both that [Redacted] the requested cell tower dumps will provide evidence helpful in identifying the Subject, associates present or communicating with the Subject during the relevant time period, and/or potential witnesses."); *see also Sherod et al*, 2025 WL 1736279, at *4 (holding that "three sets of tower dump warrants in this case were supported by probable cause and were sufficiently particularized").

*Second*, the warrant establishes a nexus between the information sought (cell tower data) and the criminal behavior (robberies). *See* Exhibits A-D; *Griffith*, 867 F.3d at 1271. As detailed above, the only information requested was for devices present in the area of the robberies at the time they occurred—and was furthered narrowed to devices present in more than one instance. *Id.* at Attachment A; *Matter of Search of Info. Associated with Cellular Tel. Towers Providing Serv. to [Redacted] Stored at Premises Controlled by Verizon Wireless*, 616 F. Supp. 3d at 10 (explaining that a tower dump warrant met the Fourth Amendment's particularity requirement because "[e]ach warrant sets out, in Attachment A, the three categories of cell towers from which information is requested, as well as the [Redacted] date and thirty-minute time period to which the information should be restricted for each category of cell towers"). The warrants also sufficiently identify the information sought by listing the type of data required for each device that falls in the scope of the warrants. *Id.* at Attachment B; *see James*, 3 F. 4th at 1106 (holding that tower dump warrants satisfied the particularity requirement because they were appropriately "constrained—both geographically and temporally—to the robberies under investigation").

The defendants, on the other hand, argue that "these warrants effectively authorized the Government to go digging through the data of every cellular device of every single individual near

14

the crime scenes in the vain hope of finding someone, anyone, who is guilty." ECF No. 167 at 11 (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).  But, as discussed in *Sherod*, the defense comparison to *Ybarra* is faulty.  *Sherod et al*, 2025 WL 1736279, at *5 ("The flaw in Sherod's contention that this case is the equivalent of an 'all persons warrant' is that the searches here (consisting of the acquisition of phone records from third-party phone providers without directly connecting the phone numbers to any user) do not remotely approximate the physical searches of persons in *Ybarra* [].").  *Ybarra* addressed limitations on physical searches of persons—not searching property, as is the situation here.  As *Ybarra* stated:  "Where the standard is probable cause, a search or seizure *of a person* must be supported by probable cause particularized with respect to that *person*." *Ybarra*, 444 U.S. at 91 (emphasis added).  A physical search of someone's person is more intrusive than disclosure of third-party Provider records.  *Id.* ("On that sliding scale, the search of a person is highly intrusive.  Obtaining targeted phone records from a third-party phone provider is not.  These tower dump warrants are not "all persons" warrants because no persons were searched.").  Accordingly, the warrants were sufficiently particular even if certain responsive records did not belong to a suspect, but to someone who was coincidentally present at two of the offense locations at the specific times of the robberies.[6]

---

[6] To the extent the defendants move to suppress the tower dump data as it pertains to these innocent bystanders, they lack standing.  *See Sherod et al*, 2025 WL 1736279, at *5 ("While it is beyond dispute that the information collected in the tower dump included phone numbers other than those appearing at multiple burglary sites at the times of the burglaries, Sherod lacks standing to challenge the privacy interests of those unspecified persons.") (quoting *United States v. Payner*, 447 U.S. 727, 731 (1980) ("[T]he defendant's Fourth Amendment rights are violated only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party."))

But the thrust of the defendants' motion is that, regardless of whether the government obtains a warrant, tower dump search warrants are unconstitutional. *See* ECF No. 167. In reaching their conclusion, the defendants rely heavily on the Fifth Circuit's ruling in *Smith*, discussed *supra*, which found geofence search warrants unconstitutional. *Id.* at 10-11 (citing *Smith*, 110 F.4th 817). The defendants' note that, like tower dumps, geofence warrants "never include a specific user to be identified, only a temporal and geographic location where any given user may turn up post-search". ECF No. 167 at 10 (citing *Smith*, 110 F.4th at 837). But given the differences between the two technologies at issue, these mild similarities do not justify suppression. A geofence warrant "requires a service provider to produce location data from cell phone users who were near the scene when a crime occurred." *United States v. Chatrie*, 136 F.4th 100, 102 (4th Cir. 2025). The data contained in such a return is "remarkably extensive, logging a device's location, on average, every two minutes, even in terms of elevation . . . If a device is in a building, for example, its Location History can show on which floor." *Id.* (cleaned up). By contrast, tower dump data requires cellphone providers to identify devices that interacted with a cell tower servicing a particular geographic area, usually at a particular time. Unlike geofence data, tower dump returns do not include any precise location information for responsive devices. Rather, the only location information that law enforcement can glean is whether a device was close enough to a cell tower to interact with it. The utility of tower dump data comes into play when, as here, law enforcement is investigating multiple offenses with no suspects. Law enforcement scopes the tower dump records for devices that interacted with more than one of the requested towers. And while the data may capture an innocent device coincidentally present in two different offense locations, that slim chance does not negate the fair probability that the data will reveal the suspect's device. *Cf. Illinois v. Wardlow*, 528 U.S. 119, 126 (2000) ("Indeed, the Fourth Amendment accepts that risk

in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent."); *see also Sherod et al*, 2025 WL 1736279, at *5 ("The mere fact of limited intrusion on the privacy interests of innocent persons while executing a valid warrant targeting a viable suspect does not invalidate the warrant or permit one person to assert another's Fourth Amendment claim."). Given the distinctions between geofence data and the tower dump records at issue here, the Court should decline the defendants' invitation to hold that all tower dump search warrants are unconstitutional.

### III.  Exclusion is Not an Appropriate Remedy Because the Good Faith Exception Applies

Even if the warrants were not sufficiently supported by probable cause, which they are, the Court should still deny the defendants' motion to suppress because the good faith exception to the exclusionary rule applies.

The exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations. . . . Where suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). "[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *United States v. Leon*, 468 U.S. 897, 922 (1984). Therefore, the exclusionary rule generally does not apply to evidence seized by "an officer acting with objective good faith [who] has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 921.

"[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or, as [the Supreme Court] ha[s] sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). To nevertheless justify suppression, the defendants must show that the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely

17

unreasonable." *Leon*, 468 U.S. at 923. Put another way, to conclude that the good faith doctrine does not apply requires a finding that the warrant judge made "not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As described above, the search warrants easily meet the standard of probable cause and therefore were not so lacking that the FBI's reliance on the warrants was unreasonable. *See* Exhibits A-D. Similar to the officers using geofence technology in *Smith*, the FBI in this case availed itself of cutting-edge technology and conferred with the Department of Justice. *See Smith*, 110 F.4th at 839 (citing *United States v. McLamb*, 880 F.3d 685 (4th Cir. 2018)) ("In *McLamb*, the Fourth Circuit declined to suppress evidence when officers were utilizing "cutting edge investigative techniques" and consulted with attorneys from the Department of Justice."). While this Court is considering the instant motion in 2025, the tower dump warrants were obtained in November 2020—when cell tower data was even more novel. And, like *Smith*, the FBI consulted with the U.S. Attorney's Office in putting together the warrants. The complexity of analyzing whether and how the Fourth Amendment applies to new technologies is evident in the disagreements between courts published in the past few years. *See e.g.*, *Chatrie*, 136 F.4th 100 (upholding the constitutionality of geofence search warrants); *Smith*, 110 F.4th 817 (holding that geofence search warrants are unconstitutional); *Carpenter*, 138 S. Ct. 2206 (determining that the third-party doctrine does not apply to CSLI records and is therefore a Fourth Amendment search). Law enforcement could have simply obtained the records without a warrant, relying on decisions finding that such records require no warrant. *Sherod*, 2025 WL 1736279, at *6 ("Tower dumps have been a relatively prevalent investigative technique since cell phone usage became widespread . . . In fact, jurisprudence in the entire area of cell phone and GPS-based surveillance

18

is rapidly evolving. The disparate court decisions in this arena highlight the difficulty in applying traditional Fourth Amendment principles to modern-day technological advances."). But in an area of rapidly emerging technologies, and courts responding sometimes inconsistently to that technology, law enforcement took the additional steps of obtaining warrants for these records. This is a reflection of the good faith under which these agents operated.

Given the ample support for probable cause and the complexity of the issues raised by tower dump data, law enforcement acted in reasonable reliance on the search warrants, and suppression would not be an appropriate remedy should the Court find a Fourth Amendment violation. *See Davis*, 564 U.S. at 236–37 ("Where suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted."); *Smith*, 110 F.4th at 839–40 ("[W]e, like the district court struggle to see any wrongful conduct to deter, because the conduct of law enforcement in [] this case seemed reasonable and appropriate when considering the specific circumstances with which the investigators were faced.") (cleaned up).

## CONCLUSION

For all the foregoing reasons, the Government requests that the Court deny defendants' motion to suppress the tower dump records.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:   /s/ *Sarah Martin*
Sarah Martin
Assistant United States Attorney
D.C. Bar 1612989
601 D Street NW
Washington, D.C.
(202) 252-6775
Sarah.Martin@usdoj.gov