UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | No. 23-cr-190-02 (ABJ) |
| D'MARRELL MITCHELL | : | |

### REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF UNCONSTITUTIONAL WARRANTS

Pursuant to the Fourth Amendment to the United States Constitution, Mr. D'Marrell Mitchell, through undersigned counsel, respectfully submits this brief in support of his motion to suppress the use of all evidence obtained based on a warrant for cellphones seized on May 27, 2021 (hereinafter "Cellphone Warrant"). The Cellphone Warrant lacked probable cause and was obtained after an unreasonable delay.

### Argument

**I.    The Cellphone Warrant Lacked Probable Cause.**

As Mr. Mitchell explained in his opening brief, the cell phone warrant was not supported by probable cause because the phones' mere presence in Gause's alleged vehicle is insufficient to establish probable cause.[1] "[T]he mere association with a known or suspected criminal or the presence in a location known to be involved in criminal activity does not establish probable cause." *United States v. Ralston*, 88 F.4th 776, 781 (8th Cir. 2023); *see also Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal

---

[1] For avoidance of doubt, Mr. Mitchell's motion is premised only on the phones seized from the vehicle on May 27, 2021, and not on the phone allegedly seized from Gause's person the day before. However, the reasoning of Mr. Mitchell's motion extends—at least in significant part—to the phone seized from Gause's person.

activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."). Accordingly, "[p]ossessing a cell phone during one's arrest for a [] conspiracy is insufficient by itself to establish a nexus between the cell phone and any alleged [criminal] activity." *United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016) (discussing drug-related conspiracy); *see also United States v. Williams*, 2022 WL 2195351, at *9 (D. Ariz. May 10, 2022), *report and recommendation adopted*, 2022 WL 2197095 (D. Ariz. June 17, 2022) (rejecting the defendant's argument that probable cause to search a cell phone is established whenever a defendant is suspected of committing a crime and had a cell phone on him at the time of his arrest).

Furthermore, mere assertions by law enforcement that cell phones are used in the commission of crimes is not enough to establish a connection between the alleged offence and a seized cell phone. *See, e.g.*, *United States v. Oglesby*, 2019 WL 1877228, at *6 (S.D. Tex. Apr. 26, 2019). The government suggests that its affidavit in this case is somehow better because it specifically mentions the agent's experience with the use of cellphones during robberies. *See* Dkt. 190 at 8 (citing Dkt. 1901-1 at 9 (Affidavit ¶ 7)). But the agent's assertions are so general as to apply to virtually any offense. Indeed, the agent does not even mention robberies in this part of his discussion, referring only to "Hobbs Act Violations" in general. And it is transparent that this language is used by the government across affidavits, with one type of offense simply being swapped out for another.

In any event, case law shows that even when agents claim that cell phone use is frequent for a particular type of offense generally, that still is not enough to establish probable cause to search a phone. For example, in *United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. 2016), the court suppressed evidence from the search of a cell phone seized from a defendant during his

arrest for a drug-related conspiracy. *Id*. at 495. The *Ramirez* court explained that the officer's assertion that in his training and experience, "cell phones are the 'tools of the trade' of drug traffickers," did not save the search warrant of the phone. *Id.* at 496; *see also In re Search of Certain Cell Phones*, 541 F. Supp. 2d 1, 2 (D.D.C. 2008) (refusing to issue search warrant where, even with the police officer's representation that narcotics traffickers commonly use cell phones to communicate, in the absence of any indication that the *owner ever used* the phone to facilitate drug trafficking, the court refused to "conclude that there is, *ipso facto*, a reasonable likelihood that they used their cell phones to sell drugs, thus justifying the search of its entire contents"); *In re Search of One Device & Two Individuals Under Rule 41*, No. [REDACTED] (ZMF), 2025 WL 1587991, at *7 (D.D.C. May 6, 2025) (similarly rejecting a search warrant based on broad assertions about defendants in general using cell phones to document their crimes (in that case illegal possession of a firearm)).

The government next claims that the fact the warrant tied Gause's phone to a number that was suspected to be in the vicinity of several additional robberies bolsters its probable cause claim. Whatever this says about Gause's phone,[2] it does nothing to tie the remaining phones to the other robberies. In *United States v. Waldrip*, 2019 WL 13143479 (S.D. Iowa Apr. 3, 2019), a court suppressed evidence from the search of a cell phone seized from one of two codefendants in a drug trafficking case. The government in that case had introduced evidence regarding the codefendant's use of a cell phone to track a delivery of methamphetamine. *Id.* at *5. But the district court suppressed the evidence because, as it explained, "fatally, the Government introduced no evidence that [the defendant's] cell phone was used in criminal activity or contained evidence of a crime."

---

[2] *Cf. United States v. Williams*, 2022 WL 2195351, at *10 (rejecting argument that "there was probable cause for a search warrant because cell phone information . . . potentially places the individual within proximity of the location where the firearm was stolen").

3

*Id.* The fact that the phone was seized from the defendant when he was stopped near his codefendant's residence was not enough to "associate [the defendant's] cell phone with criminal activity." *Id.* at 6. As the court explained, unlike with his codefendant, there was "[t]here [was] no evidence [the defendant] tracked any packages on his cell phone. There [was] no evidence [he] sent or received any text messages on his cell phone. There is no evidence [he] took any calls— related to drug trafficking or otherwise—on his cell phone." *Id.* at *5.

The same is true here. The affidavit is devoid of any evidence that Mr. Mitchell used a cell phone to commit the alleged robbery, much less that he used one of the cell phones found in Gause's car. Nor is there any evidence otherwise tying those cell phones to the offenses in question beyond their mere presence in the vehicle. In other words, at best, the government's assertion of probable cause is based on pure speculation. That is not enough.

The government's attempt to fall back on the good faith exception fares no better. The government argues that, even if the search warrant lacked probable cause, it can still rely on the good faith exception to sustain its search. But Courts have repeatedly rejected the application of the good faith exception where officers have secured search warrants based on mere speculation that the phones contained evidence of a crime. *See, e.g.*, *Ramirez*, 180 F. Supp. 3d at 496 (explaining that the warrant application was so lacking in indicia of probable cause that the officer cannot reasonably have relied on it); *United States v. Williams*, 2022 WL 2195351, at *10 (similar).

## II. The Cellphone Warrant Was Obtained Too Late.

In addition, a seizure that is "lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes upon the defendant's possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 125 (1984). Here, according to the government, Anne Arundel County obtained a search warrant within two weeks of the seizure of the three cell phones. It also claims that the FBI did not become aware of the connection between

4

the November robberies it was investigating and the May 26, 2021 robbery investigation that led to the seizure of the cell phones until September 2021. According to the government, on September 30, 2021, the FBI then took custody of the cell phones and, over a month and a half later, obtained warrants to search them. This timeline, the government argues, refutes any allegation of undue delay.

The government's purported reliance on the Anne Arundel County warrant, however, is a red herring. So far as defense counsel can tell, three of the seized cell phones were never searched pursuant to that warrant. Certainly, unlike Gause's phone, the FBI does not appear to have ever obtained any cell phone extractions from Anne Arundel related to the other three phones.[3] And, under Maryland law, a search warrant is only valid for "ten days from the date it was issued" and after "the expiration of ten days, the warrant is void." Rule 4-601(h)(1). That unexecuted (or partially executed) warrant provides no justification for the government's delay.

The government also suggests that its delay should be judged from the time it realized the cell phones from the May 26, 2021 robbery were connected to its case or from the time the FBI took custody of the cell phones. Even if that were correct, however, the delay would still be too long. Numerous courts have held that delays much shorter than the 52 days it took for the FBI to obtain a search warrant after it took custody of the cell phones run afoul of the Fourth Amendment. *See, e.g.*, *United States v. Mitchell*, 565 F.3d 1347, 1351-52 (11th Cir. 2009) (ordering suppression of evidence from a computer hard drive after 21-day delay); *United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019) (ordering suppression of evidence from a smartphone after 31-day delay);

---

[3] If this is not the case, and the government intends to claim that the evidence in its possession from the cell phones was obtained pursuant to those warrants and in reliance on them, the defense requests the government to immediately produce all missing evidence about Anne Arundel county's execution of the warrants and extraction of the phones.

*Waldrip*, 2019 WL 13143479, at *7 (ordering suppression after 5-day delay); *United States v. Tisdol*, 544 F. Supp. 3d 219, 227 (D. Conn. 2021) (ordering suppression of evidence from a smartphone after 34-day delay); *see also United States v. Dass*, 849 F.2d 414, 414-15 (9th Cir. 1988) (affirming suppression where there was a delay of 7-23 days in getting warrant to search seized packages); *United States v. Bumphus*, 227 A.3d 559, 568 (D.C. 2020) (affirming suppression where there was a four day delay between the seizure of the vehicle and other items (e.g., cell phone) and the warrant to search it).

The government, nevertheless, claims that its delay was appropriate because Gause and Mitchell were incarcerated and had a diminished possessory interest in their phones. But, as the government admitted, neither Gause nor Mitchell consented to the seizure of their cell phones nor voluntarily shared their contents. *See United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019) (noting this supports a conclusion that the defendant had not diminished his possessory interest in the phone). Furthermore, even though some case law suggests incarceration may diminish a defendant's possessory interest to some degree, it does not defeat a claim of undue delay on its own. For example, the defendants in *Pratt* and *Tisdol* were incarcerated. *Pratt*, 915 F.3d at 270 (discussing the defendant's prison phone calls); *Tisdol*, 544 F. Supp. 3d at 226 (noting the defendant was incarcerated). The Fourth Circuit and the District of Connecticut nevertheless held that the delay in obtaining warrants in those cases (31 days in one case and 34 in the other) was unreasonable. *Tisdol*, 544 F. Supp. 3d at 227; *Pratt*, 915 F.3d at 272. Here, the government's delay of 52 days is substantially longer than in either of those cases.

The government also argues that its delay was justified because there was probable cause to believe the phone contained evidence of the charged offenses. For the reasons explained above, it is wrong. In any event, the presence or absence of probable cause is hardly decisive. Otherwise,

6

delay would be irrelevant. Either the evidence would be suppressed because the government lacked probable cause, or it would not because the government had probable cause. Either way, there would be no need Fourth Amendment doctrine about delay at all. That, of course, is not the law.

Finally, the government focuses on the purported complexity of its case. Although the complexity of the government's investigation may justify a delay to some degree, it has provided no concrete reason to think a delay of 52 days is reasonable. It complains, for example, that it had to review several different law enforcement case files and lay out the connection between the facts of the November 2020 robberies and the relationship with Gause's cell phone. But the government fails to say when it received those case files. And it admits it tied Gause's cell phone number to the November 2020 robberies by September 14, 2021—*more* than 52 days prior to the cell phone warrant. On this record, the government has not justified its delay and, at a minimum, an evidentiary hearing is required to sort out the myriad of factual questions about the reasons for the government's delay.

## **Conclusion**

For the foregoing reasons, and such other reasons as may be presented at a hearing on this motion, the warrant lacked probable cause and was obtained too late, and the evidence seized must be suppressed as the fruit of the unlawful searches. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (if the evidence has been obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).

>Respectfully submitted,
>
>A. J. KRAMER
>FEDERAL PUBLIC DEFENDER
>
>*/s/ Diane Shrewsbury*
>DIANE SHREWSBURY
>BENJAMIN SCHIFFELBEIN
>Assistant Federal Public Defenders
>625 Indiana Avenue, N.W., Suite 550
>Washington, D.C.  20004
>(202) 208-7500